# MODZELEWSKI'S TOWING & STORAGE, INC., ET AL. *v.* COMMISSIONER OF MOTOR VEHICLES ET AL.
## (SC 21039)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander, Dannehy and Bright, Js.

*Syllabus*

Pursuant to state regulation (§ 14-63-36c (c)), "[a] licensed wrecker service may charge additional fees for exceptional services, and for services not included in the tow charge or hourly rate, which are reasonable and necessary for the nonconsensual towing . . . of a motor vehicle. Any such additional fees shall be itemized in accordance with the hourly charge for labor posted by the licensed towing service, as required by the provisions of section 14-65j-3 of the [state regulations]."

The plaintiffs, wrecker services licensed in Connecticut, appealed to the trial court from the decision of a Department of Motor Vehicles hearing officer, who determined that the plaintiffs had overcharged the owner of a tractor trailer for certain nonconsensual towing services, and who ordered that the plaintiffs pay restitution and imposed a civil penalty. The plaintiffs were summoned by the state police to provide towing services after the tractor trailer, which was insured by the defendant insurance company S Co., became disabled during a highway accident. The plaintiffs used special equipment to remove the tractor trailer from the highway and to tow it to

353 Conn. 486     SEPTEMBER, 2025     487

Modzelewski's Towing & Storage, Inc. *v.* Commissioner of Motor Vehicles

the plaintiffs' storage facilities. The plaintiffs sent S Co. an itemized invoice for the work performed, including fees associated with the use of the special equipment, which S Co. paid under protest. S Co. subsequently filed a complaint with the named defendant, the Commissioner of Motor Vehicles, claiming, inter alia, that the plaintiffs' charges were unfair and unreasonable. In determining that the plaintiffs overcharged for their services, the hearing officer concluded that the plaintiffs had established their own rate schedule for nonconsensual towing services that was based on the special equipment they used, rather than on the hourly rate for labor set by the commissioner. The hearing officer ultimately disallowed most of the plaintiffs' charges, including any charge that was deemed to be an equipment charge and not an hourly labor charge. After the trial court rendered judgment dismissing the plaintiffs' administrative appeal, the plaintiffs appealed to the Appellate Court, which affirmed the trial court's judgment. On the granting of certification, the plaintiffs appealed to this court. *Held*:

The Appellate Court incorrectly determined that fees for exceptional services, as contemplated by § 14-63-36c (c), exclude costs associated with the procurement and maintenance of special equipment used to provide those exceptional services and that such fees must instead be based on the hourly labor rate for nonconsensual towing determined by the commissioner.

Contrary to the Appellate Court's conclusion, the relevant text of § 14-63-36c (c) was not clear and unambiguous, as that text was subject to more than one plausible interpretation, and this court concluded that the more reasonable interpretation of the text of § 14-63-36c (c) was that it permits a wrecker service to charge additional fees for exceptional services that are reasonable and necessary for nonconsensual towing provided that those additional fees are itemized and posted on a sign, in conformance with how the hourly charge for labor must be posted pursuant to § 14-65j-3, and provided that such additional fees are itemized separately in the invoice submitted to the owner of the vehicle that has been towed.

This court reasoned that, if it were to construe § 14-63-36c (c) to prohibit wrecker services from charging additional fees for the costs associated with the use of the special equipment needed to perform the exceptional services sometimes required for nonconsensual towing, they would be unable to recoup the costs of such equipment and would therefore likely not engage in the provision of such exceptional services.

Moreover, there was no merit to the commissioner's claim that wrecker services could recoup the costs of special equipment through the hourly rate for nonconsensual towing determined by the commissioner, as the regulations exclude exceptional services from the definition of "hourly rate," and, in any event, if the commissioner were to base the hourly rate for all nonconsensual towing, at least in part, on the cost to procure and maintain the special equipment needed for exceptional services, vehicle owners

Modzelewski's Towing & Storage, Inc. *v.* Commissioner of Motor Vehicles

whose tow does not require exceptional services would effectively subsidize the cost of towing for those owners who do require exceptional services.

Accordingly, this court reversed in part the Appellate Court's judgment and remanded the case for further proceedings before a Department of Motor Vehicles hearing officer concerning S Co.'s challenge to the plaintiffs' charges in light of this court's interpretation of § 14-63-36c (c).

Argued May 15—officially released September 23, 2025

*Procedural History*

Appeal from the decision of the named defendant ordering the plaintiffs to pay to the defendant Sentry Select Insurance Company restitution for alleged overcharges for towing and recovery services, and to pay a civil penalty to the Department of Motor Vehicles, brought to the Superior Court in the judicial district of New Britain, where the action was withdrawn as to the defendant Sentry Select Insurance Company; thereafter, the case was tried to the court, *Hon. Henry S. Cohn*, judge trial referee; subsequently, the court remanded the case to the named defendant for further findings; thereafter, a department hearing officer issued a supplemental decision; subsequently, the court rendered judgment dismissing the appeal, from which the plaintiffs appealed to the Appellate Court, *Moll*, *Cradle* and *Westbrook*, *Js.*, which affirmed the trial court's judgment, and the plaintiffs, on the granting of certification, appealed to this court. *Reversed in part*; *further proceedings.*

*Jesse A. Langer*, with whom, on the brief, were *Jeffrey D. Bausch* and *Ryan P. Coleman*, for the appellants (plaintiffs).

*Drew S. Graham*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (named defendant).

*Opinion*

McDONALD, J. In this certified appeal, we consider whether the Appellate Court correctly concluded that

Modzelewski's Towing & Storage, Inc. *v.* Commissioner of Motor Vehicles

§ 14-63-36c (c) of the Regulations of Connecticut State Agencies prohibited the plaintiffs, Modzelewski's Towing & Storage, Inc. (MTS), and Modzelewski's Towing & Recovery, Inc., from charging additional fees based on their costs associated with the use of special equipment that was needed to conduct certain "exceptional services" in connection with the nonconsensual towing of a tractor trailer. We conclude that the Appellate Court incorrectly determined that the fees for exceptional services must be based on an hourly charge for labor. See *Modzelewski's Towing & Storage, Inc.* v. *Commissioner of Motor Vehicles*, 225 Conn. App. 386, 401, 405–406, 316 A.3d 780 (2024). Instead, the regulatory reference in § 14-63-36c (c) to the itemization of "additional fees . . . in accordance with the hourly charge for labor posted by the licensed towing service" is more reasonably construed as a posting requirement. As a result, we also conclude that the plaintiffs may, pursuant to § 14-63-36c (c), charge additional fees for exceptional services that are based on the cost of the special equipment needed to provide the exceptional services. Accordingly, we reverse in part the judgment of the Appellate Court and remand the case for further proceedings.

In the afternoon of December 4, 2014, the Connecticut State Police summoned the plaintiffs, which are licensed wrecker services; see General Statutes § 14-1 (110);[1] to an accident in Danbury involving two tractor trailers

---

[1] A "wrecker" is defined in the General Statutes as "a vehicle which is registered, designed, equipped and used for the purposes of towing or transporting wrecked or disabled motor vehicles for compensation or for related purposes by a person, firm or corporation licensed in accordance with the provisions . . . of this chapter . . . ." General Statutes § 14-1 (110). We note that No. 25-55 of the 2025 Public Acts, § 25, amended § 14-1 to add a new definition for "wrecker service," which is "any person, firm or corporation engaged in the business of operating a wrecker for the purpose of towing or transporting a motor vehicle." No one disputes that the plaintiffs are properly licensed wrecker services under both definitions.

Modzelewski's Towing & Storage, Inc. *v.* Commissioner of Motor Vehicles

on Interstate 84 westbound at the Route 7 entrance. One of the tractor trailers, which was owned by David Tuttle, doing business as Big Daddy Trucking (Big Daddy) of Waymart, Pennsylvania, and insured by the defendant Sentry Select Insurance Company (Sentry),[2] collided with a second tractor trailer that had been involved in an earlier accident. Big Daddy's tractor trailer was severely damaged and wedged beneath a metal guardrail.

Given the state police's characterization of the accident, the plaintiffs dispatched a "1075 rotator" truck to the scene, which is a seventy-five ton, "specialized piece of equipment . . . ." The state police regulations define a "rotator" truck as "a wrecker/recovery vehicle consisting of a rotating superstructure (center post or turntable), adjusting boom, operating machinery, and one or more operator's stations mounted on a frame attached to a truck chassis. Such vehicle has the ability to lift, lower and swing loads at various radii . . . ." Regs., Conn. State Agencies § 29-23a-1 (5). During a hearing held in January, 2020, James E. Modzelewski, MTS' president, testified that the cost for a rotator truck was about $800,000.

When the plaintiffs arrived at the accident scene at approximately 2:30 p.m., their employees "quickly swept and removed all [of] the large parts that had come off from the tractor and trailer and placed [them] into large disposal bags to clea[r] the roadway. When all [of the] debris was picked up, the [rotator truck] was . . . set up on an [Occupational Safety and Health Administration (OSHA)] certified platform . . . ." The plaintiffs utilized the rotator truck "to create a pick and rotate recovery method" that would not cause any additional lane closures or further damage to the guard-

_____

[2] Although Sentry was named as a defendant in the plaintiffs' administrative appeal to the Superior Court, the appeal was withdrawn as to Sentry on October 23, 2020.

Modzelewski's Towing & Storage, Inc. *v.* Commissioner of Motor Vehicles

rail. After the tractor and trailer were removed from the highway, they were transported by the plaintiffs to a nearby private parking lot.[3] Additional equipment arrived at that secondary scene, where the plaintiffs continued to work on the wreckage. Following additional preparations, the wreckage was transported to the plaintiffs' facility at approximately 8 p.m., almost six hours after the plaintiffs were first dispatched. In a narrative that accompanied their invoice, the plaintiffs reported that, the next day, they used the rotator truck "to remove the damaged tractor from the low-bed trailer and [to] secure it at the storage facility. This process took approximately [two and one-half] to three hours."

The plaintiffs sent Sentry an itemized invoice for the work performed, and, after some back-and-forth, Sentry paid $29,339.30 "under duress" so that the plaintiffs would release the tractor and trailer.[4] The invoice charged $8000 for the rotator truck, which was comprised of two separate $1750 charges for "[the] set up . . . and [the] first hour of service," as well as $4500 for six hours of work, at $750 per hour. The plaintiffs also charged Sentry $250 per hour for the dispatch of two supervisory employees, namely, an "OSHA [r]igging [s]upervisor," who was in charge of ensuring "[s]afety on scene," and a scene supervisor, who was responsible

---

[3] According to the plaintiffs, the state police had expressed concerns about traffic safety and congestion, given that rush hour was approaching. As a result, the plaintiffs contend that, "[b]ased on its assessment of the accident scene, including the location and condition of the severely damaged tractor trailer unit, MTS determined that the tow would take hours. Accordingly, the most expedient and safe approach [was] to relocate the damaged unit to a nearby parking lot . . . ."

[4] Sentry represented that the plaintiffs had refused to release the tractor and trailer until the invoice was paid in full. Moreover, the plaintiffs had "expressly prohibited Sentry or individuals retained on [Sentry's] behalf from [entering the plaintiffs'] property in order to remove the insured [tractor and trailer]" until Sentry provided the plaintiffs with proof of adequate insurance coverage. Sentry provided such proof, as well as "a hold harmless agreement, finally allowing Sentry to obtain the release of the insured [tractor and trailer] on January 20, 2015."

Modzelewski's Towing & Storage, Inc. *v.* Commissioner of Motor Vehicles

for "communicat[ing] with the officials on scene." The total cost for the OSHA rigging supervisor's eight hours of work was $2000, and the scene supervisor's four hours of work was an additional $1000. The plaintiffs also dispatched an "emergency response vehicle" to the scene and charged $3000 for four hours of work, at $750 per hour. The invoice included other additional charges[5] and, also, assessed daily storage fees of $44 and $54 for the tractor and the trailer, respectively.

Sentry filed a complaint with the named defendant, the Commissioner of Motor Vehicles, disputing various charges and arguing that the invoice "was . . . not fair or reasonable" because, among other things, "[t]here was no justifiable reason" to tow the wreckage to a private parking lot before transporting it to the plaintiffs' facility. Sentry also took issue with the two $1750 set up charges for the rotator truck, as well as the $750 hourly rate, which it contended was well above the $325 hourly rate that was allowed under the regulations. Furthermore, Sentry protested the $750 hourly rate for the emergency response vehicle, for which, it asserted, it should have been billed at not more than $200 per hour. It also alleged that the charges for a scene supervisor and an OSHA supervisor were improper. Addition-

_____

[5] The additional charges, which are not particularly germane to the certified issue, are the use of a "heavy-duty flatbed," an "extendable manlift," "communication systems," several "[l]ight [t]ower[s]," multiple "[l]ow-[b]ed [t]railer[s]," "tractor unit[s]," as well as equipment that the plaintiffs used to recover fuel and to clean fluids from the roadway. The plaintiffs invoiced a $300 "[f]uel [s]urcharge," which they described as "a flat charge [that] is added to all motorized equipment," as well as a $110 charge for a "[t]ruck [c]over" that was "used to cover [the] damaged truck." Finally, the plaintiffs assessed a "10 [percent] [a]dministration [b]illing [f]ee" that amounted to $2258.50, which compensated them for, among other services, taking and downloading "detailed photos of [the] accident scene . . . preparing [a] detailed narrative from [the] supervisor and [the] recovery crew on scene . . . itemizing all equipment used on scene . . . interacting wit[h] operators/owners of equipment at storage yard . . . escorting person to retrieve personal belongings . . . [and] interact[ing] with insurance appraisers . . . ."

Modzelewski's Towing & Storage, Inc. *v.* Commissioner of Motor Vehicles

ally, Sentry argued that the other equipment used was "[u]necessary" and that other charges in the invoice were "not allowed by Connecticut regulations."[6] The plaintiffs disputed Sentry's allegations, and a hearing was held before a hearing officer.

After hearing testimony from Modzelewski and an analyst with the commissioner's consumer complaint center, the hearing officer concluded that the plaintiffs had engaged in nonconsensual towing services under General Statutes § 14-66 (h)[7] and had "charged fees in excess of the maximum rates and charges permissible under the . . . statutes and regulations," in violation of § 14-63-36c (b) of the regulations. The hearing officer reasoned that § 14-63-36c (c) of the regulations applied, which provides in relevant part that "[a] licensed wrecker service may charge additional fees for exceptional services . . . which are reasonable and necessary for the nonconsensual towing or transporting of a motor vehicle. Any such additional fees shall be itemized in accordance with the hourly charge for labor posted by the licensed towing service, as required by the provisions of section 14-65j-3 of the Regulations of Connecticut State Agencies. . . ."

On the basis of Modzelewski's testimony, the hearing officer found that, "[r]ather than using and charging the approved rates, the [plaintiffs had] established, posted and used [their] own rate schedule based on

[6] Specifically, Sentry contended that the manlift, communication equipment, light towers, heavy-duty flatbed, additional trailer, and the equipment used for fuel recovery and cleanup were unnecessary and that "all [charges related to the second day were] completely unnecessary." Furthermore, Sentry argued that the fuel surcharge and administrative fee were not authorized by law.

[7] General Statutes § 14-66 (h) defines "nonconsensual towing or transporting" in part as "the towing or transporting of a motor vehicle in accordance with the provisions of section 14-145 [governing the towing of a motor vehicle from private property] or for which arrangements are made by order of a law enforcement officer," which was the case here.

Modzelewski's Towing & Storage, Inc. *v.* Commissioner of Motor Vehicles

equipment." The hearing officer concluded that the plaintiffs had, therefore, "charged fees in excess of the maximum rates and charges permissible . . . ." Of the $29,339.30 paid by Sentry, the plaintiffs were ordered to pay $24,687.22 in restitution, as well as a $4000 civil penalty.

The plaintiffs appealed from the hearing officer's decision to the Superior Court; see General Statutes § 4-183 (a); and the court, as an initial matter, agreed with the commissioner that the applicable regulations "require the [wrecker service] to adhere to the hourly rate set for nonconsensual tow[ing] or transportation . . . ." The trial court acknowledged that the regulations "allow the [wrecker service] to charge for 'exceptional services' that consist of 'special equipment' " but only if "(1) the services [are] 'reasonable and necessary,' (2) the services [are] itemized in accordance with the hourly charge for labor posted by the towing service, in keeping with . . . § 14-65j-3 [of the regulations], and (3) the fees [are] itemized separately, with the [wrecker service] maintaining records to justify the additional fees." (Footnote omitted.) The court found that the administrative record was "ambiguous" as to whether the plaintiffs had "charged only for equipment [and] not for labor," as "[t]here [was] nothing in the record or in the [hearing officer's] final decision to explain whether each charge was for [the plaintiffs'] labor or [for] the equipment itself or both." The court therefore remanded the case to the hearing officer to determine, among other things, which, if any, of the invoiced charges were for labor and whether "some of the labor charges also include[d] an equipment charge . . . ."

On remand, the hearing officer explained that he had disallowed certain charges in the plaintiffs' invoice, such as "[w]hen [it] listed a charge that was found to be an equipment charge and not an hourly labor charge . . . ." The hearing officer described that, "[w]hen the

Modzelewski's Towing & Storage, Inc. *v.* Commissioner of Motor Vehicles

[plaintiffs'] invoice listed a charge that was found to be consistent with an hourly labor charge, such as [for] the scene supervisor, it was an allowed charge. When the [plaintiffs'] invoice listed a charge that was found to be an equipment charge and not an hourly labor charge, such as [for] the [rotator truck], it was disallowed. When the [plaintiffs'] invoice listed a charge that was neither an hourly labor charge nor an equipment charge, such as the 10 percent administration billing fee, it was disallowed. . . . The core issue remains [that] charges must be at hourly labor rates.''

As a result, the hearing officer determined that the plaintiffs could charge $1063.50 and $1382.55 for four hours of work by the scene supervisor and for operation of the rotator truck, respectively, but he disallowed the remaining charges because they were not calculated based on an approved hourly labor rate, because they were not necessary, or because the hearing officer ''found [them] to be . . . equipment charge[s],'' with one very minor exception. The hearing officer concluded that, although the plaintiffs had invoiced Sentry for $29,339.30, they were legally permitted to charge only $4651.78 for their work. When the matter was returned to the Superior Court following the remand, the court rendered judgment dismissing the plaintiffs' administrative appeal after finding that the hearing officer's conclusions were supported by substantial evidence.

The plaintiffs appealed to the Appellate Court, claiming, among other things, that the trial court improperly had interpreted § 14-63-36c (c) of the regulations to provide that, with respect to '' 'exceptional services,' '' a wrecker service must post, and is limited to charging, hourly labor rates and that it may not charge a set fee for the use of special equipment. The Appellate Court rejected the plaintiffs' claim after determining that the regulations are unambiguous and affirmed the trial court's judgment. See *Modzelewski's Towing & Stor-*

Modzelewski's Towing & Storage, Inc. *v.* Commissioner of Motor Vehicles

*age*, *Inc.* v. *Commissioner of Motor Vehicles*, supra, 225 Conn. App. 401–406, 415. The court concluded that there was "no support . . . in the regulations for a towing service to include an equipment charge in its rates for exceptional services." Id., 405.

This court granted the plaintiffs' petition for certification to appeal, limited to whether the Appellate Court "correctly conclude[d] that the rates for 'exceptional services' pursuant to § 14-63-36c (c) of the [r]egulations . . . exclude costs associated with the use of special equipment to accomplish the exceptional services provided." *Modzelewski's Towing & Storage, Inc.* v. *Commissioner of Motor Vehicles*, 349 Conn. 921, 321 A.3d 401 (2024). The plaintiffs argue that "[t]here is only one reasonable interpretation" of the regulations, which is that "the rates for 'exceptional services' can include the costs associated with the special equipment used to accomplish the 'exceptional services' . . . ." They maintain that, if § 14-63-36c (c) is interpreted to limit wrecker services to recovering only an hourly labor charge, such that they would be precluded from recouping the cost to purchase and maintain the specialized equipment used to perform exceptional services, then wrecker services would "struggle to recapture [their] significant investment" in capital equipment, leaving a "significant financial impact" on these companies and yielding an unworkable result. This is especially true, the plaintiffs argue, because "the special equipment used for an exceptional service is . . . not used frequently, which makes it harder for a [wrecker service] to recoup [that] significant investment . . . ." (Internal quotation marks omitted.)

The commissioner, in contrast, urges us to affirm the Appellate Court's judgment and argues that "[t]he plain and unambiguous" meaning of § 14-63-36c (c) of the regulations is that "fees for exceptional services must be based on an hourly charge for labor." (Internal quota-

Modzelewski's Towing & Storage, Inc. *v.* Commissioner of Motor Vehicles

tion marks omitted.) Furthermore, the commissioner contends that "[t]he legislature has explicitly authorized [him] to consider [wrecker services'] operating costs" when setting the "uniform rates and charges for nonconsensual tow[ing]," such that it is not necessary to interpret § 14-63-36c (c) as a mechanism for recouping the cost of the special equipment used to provide an exceptional service. Because additional fees for exceptional services "are for the 'use' of specialized equipment instead of the cost [of] purchasing it, which already is factored into the . . . set rates," the commissioner asserts that the " 'use' of the [specialized] equipment . . . more appropriately is measured by the time an employee spends using the equipment (i.e., an hourly labor charge) than by the cost [that the wrecker service] incurs to purchase or maintain it." The commissioner contends that, as a result, "the legislature unambiguously has determined that the amount [a wrecker service] may charge for exceptional services is determined by 'the hourly charge for labor posted by the licensed towing service . . . .' Regs., Conn. State Agencies § 14-63-36c (c)."

Our review is governed by the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq., pursuant to which this court does not "retry the case or . . . substitute its judgment for that of the administrative agency. . . . Even for conclusions of law, [t]he [reviewing] court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . [Thus] [c]onclusions of law reached by the administrative agency must stand if the [reviewing] court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . Cases that present pure questions of law, however, invoke a broader standard of review . . . [and] when a state

498 SEPTEMBER, 2025 353 Conn. 486

Modzelewski's Towing & Storage, Inc. *v.* Commissioner of Motor Vehicles

agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency [and its interpretation are] not entitled to special deference." (Internal quotation marks omitted.) *Meriden* v. *Freedom of Information Commission*, 338 Conn. 310, 318–19, 258 A.3d 1 (2021); see, e.g., *Connecticut Motor Cars* v. *Commissioner of Motor Vehicles*, 300 Conn. 617, 622, 15 A.3d 1063 (2011) (when "case presents a question of law and does not involve an agency's time-tested interpretation of its regulations . . . the standard of review is de novo"); see also, e.g., *Okeke* v. *Commissioner of Public Health*, 304 Conn. 317, 324, 39 A.3d 1095 (2012) ("[i]t is the function of the courts to expound and apply governing principles of law . . . [as] the construction and interpretation of a statute [or regulation] is a question of law for the courts" (internal quotation marks omitted)).

Here, we invoke a de novo standard of review because the commissioner's interpretation of § 14-63-36c (c) of the regulations has not previously been subjected to judicial review or to a governmental agency's time-tested construction and the issue is one of regulatory interpretation, which we treat in the same manner as a question of statutory interpretation. See, e.g., *Williams* v. *General Nutrition Centers, Inc.*, 326 Conn. 651, 657, 166 A.3d 625 (2017). "[B]ecause regulations have the same force and effect as statutes, we interpret both using the plain meaning rule." Id.; see General Statutes § 1-2z.

We begin with the text of § 14-63-36c of the regulations,[8] which provides in relevant part that, "[e]xcept

---

[8] The regulation's enabling legislation, § 14-66 (a) (2), provides in relevant part that "[t]he commissioner shall establish and publish a schedule of uniform rates and charges for the nonconsensual towing and transporting of motor vehicles and for the storage of motor vehicles which shall be just and reasonable. . . ." See, e.g., *Pereira* v. *State Board of Education*, 304 Conn. 1, 42, 37 A.3d 625 (2012) ("administrative agencies are purely creatures of legislation without inherent or common-law powers" (internal quotation marks omitted)). Pursuant to that legislative charge, the commissioner prom-

Modzelewski's Towing & Storage, Inc. *v.* Commissioner of Motor Vehicles

as otherwise provided in subsection (c) of this section, a licensed wrecker service shall not charge the owner or operator of a motor vehicle, having a [gross vehicle weight rating] of ten thousand (10,000) pounds or more, for nonconsensual towing or transporting services . . . any fees in excess of the fees computed on the basis of the hourly rate published by the commissioner." Regs., Conn. State Agencies § 14-63-36c (b); see also id., § 14-63-36b (5) (defining "hourly rate" as "the maximum hourly rate determined by the commissioner that may be charged for the nonconsensual towing or transporting and recovery of a motor vehicle with a [gross vehicle weight rating] of ten thousand (10,000) pounds or more"). Subsection (c) of § 14-63-36c, which addresses the fees for "exceptional services,"[9] provides that "[a] licensed wrecker service may charge additional fees for exceptional services, and for services not included in the tow charge or hourly rate, which are reasonable and necessary for the nonconsensual towing or transporting of a motor vehicle. Any such additional fees shall be itemized in accordance with the hourly charge for labor posted by the licensed towing service, as required by the provisions of section 14-65j-3 of the Regulations of Connecticut State Agencies. Such additional fees shall be itemized separately, and the towing

ulgated various regulations detailing what a wrecker service may charge for nonconsensual towing. See, e.g., *State* v. *White*, 204 Conn. 410, 418–19, 528 A.2d 811 (1987) ("the legislature may create a law designed to accomplish a particular purpose and may expressly authorize an administrative agency to 'fill up the details' by prescribing rules and regulations for the operation and enforcement of that law"). As we discuss in this opinion, § 14-66 (a) was amended during the most recent legislative session. See footnote 17 of this opinion.

[9] The term "exceptional services" is defined in the regulations as "the use of special equipment such as cutting torches, air compressors and other equipment not generally required for nonconsensual towing or transporting services, at the scene of an accident." Regs., Conn. State Agencies § 14-63-36b (4). We are not asked to interpret the definition of "exceptional services," and we assume, without deciding, that the use of a rotator truck, if reasonable and necessary to effectuate a tow, would qualify as an exceptional service.

Modzelewski's Towing & Storage, Inc. *v.* Commissioner of Motor Vehicles

service shall maintain accurate records which explain such additional services. The commissioner may require the wrecking service to justify such additional fees. A copy of each towing bill or invoice containing the information required pursuant to section 14-66b of the general statutes shall be given to the customer upon payment of the bill.''

To resolve the issue on appeal, we must determine the method by which a wrecker service may assess additional fees for exceptional services that are reasonable and necessary for a nonconsensual tow.[10] The commissioner argues that the requirement to provide an "itemized [list] in accordance with the hourly charge for labor posted by the licensed towing service, as required by the provisions of section 14-65j-3 of the Regulations of Connecticut State Agencies''; Regs., Conn. State Agencies § 14-63-36c (c); plainly limits the amount of the additional fees for exceptional services to the hourly charge for labor, whereas the plaintiffs argue that the regulatory language plainly is a notice and posting requirement, rather than a limitation on the amount charged. We conclude that both parties' interpretations of the regulatory scheme are plausible and, therefore, that § 14-63-36c of the regulations is ambiguous.

The Appellate Court concluded that § 14-63-36c (c) of the regulations is unambiguous with respect to the method for charging those additional fees for exceptional services and, also, that the substance of the regulation requires a wrecker service to base any such additional fees on an hourly rate for labor. See *Modzelewski's Towing & Storage, Inc.* v. *Commissioner of Motor*

___

[10] The "nonconsensual towing" of a motor vehicle is defined as a tow that is initiated (1) by the owner or lessee of private property pursuant to General Statutes § 14-145, (2) pursuant to a police order, which is how the tow at issue in this appeal originated, or (3) by order of the "traffic authority," as defined in General Statutes § 14-297 (7). Regs., Conn. State Agencies § 14-63-34 (b).

Modzelewski's Towing & Storage, Inc. *v.* Commissioner of Motor Vehicles

*Vehicles*, supra, 225 Conn. App. 405–406; see also id. (regulations "only permit an hourly charge for exceptional services that is specifically based on labor"). Furthermore, the Appellate Court concluded that § 14-63-36c (c) prohibits a wrecker service from charging additional fees related to the procurement or maintenance of the special equipment used to effectuate an exceptional service. See id., 406 (determining that "equipment charge" was "impermissible"). As an initial matter, we disagree with the Appellate Court that § 14-63-36c (c) is clear and unambiguous.

Although the Appellate Court plausibly concluded that the second sentence of § 14-63-36c (c) of the regulations clarifies the method by which a wrecker service may charge additional fees for exceptional services, we conclude that the text of that sentence is subject to more than one plausible interpretation and that the meaning of the text is, therefore, ambiguous. See, e.g., *Connecticut Housing Finance Authority* v. *Alfaro*, 328 Conn. 134, 142, 176 A.3d 1146 (2018). The second sentence of § 14-63-36c (c) provides that "[a]ny such additional fees [for exceptional services] shall be itemized in accordance with the hourly charge for labor posted by the licensed towing service, as required by the provisions of section 14-65j-3 of the Regulations of Connecticut State Agencies." The Appellate Court determined that this sentence "resolved" any ambiguity about charging additional fees for exceptional services, emphasizing that the plain language of § 14-63-36c (c) directs that the additional fees should "be 'itemized in accordance with the hourly charge for *labor* . . . .' " (Emphasis in original.) *Modzelewski's Towing & Storage, Inc.* v. *Commissioner of Motor Vehicles*, supra, 225 Conn. App. 404–405. We disagree that this sentence resolved the ambiguity.

The second sentence in § 14-63-36c (c) of the regulations reasonably can be read as either (1) a directive

Modzelewski's Towing & Storage, Inc. *v.* Commissioner of Motor Vehicles

that the exclusive method for charging "additional fees" for exceptional services is by way of an "itemized" list of those fees, which must all be based on an "hourly charge for labor," as the Appellate Court determined; see *Modzelewski's Towing & Storage, Inc.* v. *Commissioner of Motor Vehicles*, supra, 225 Conn. App. 405–406; or (2) a requirement that the wrecker service display a sign with the additional fees for exceptional services having comparable specifications to "[t]he hourly charge for labor," as it appears on the "[c]harges and conditions sign" required under § 14-65j-3 of the regulations.

We conclude that the more reasonable reading of the second sentence of § 14-63-36c (c) of the regulations is that it requires a wrecker service to post a sign displaying any additional fees for exceptional services in a manner comparable to how the hourly charge for labor appears on the charges and conditions sign required by § 14-65j-3 of the regulations. Integral to our interpretation of the second sentence of § 14-63-36c (c) is the sentence's cross-reference to § 14-65j-3, which specifies the manner in which the "[c]harges and conditions sign" with the "hourly charge for labor" shall be "displayed . . . ." See General Statutes § 1-2z ("[t]he meaning of a statute shall . . . be ascertained from the text of the statute itself and its relationship to other statutes"). The keystone phrase in the second sentence of § 14-63-36c (c) is that the additional fees for exceptional services must be "itemized in accordance with the hourly charge for labor" posted by the wrecker service, as required by § 14-65j-3.

Neither the verb "itemize" nor the phrase "in accordance with" is defined in the regulations. The dictionary definition of "itemize" is "to set down in detail or by particulars," and the dictionary definition of "accordance" is "agreement" or "conformity." Merriam-Webster Online Dictionary, available at https://www.merriam-webster.com/dictionary (last visited September 18,

Modzelewski's Towing & Storage, Inc. *v.* Commissioner of Motor Vehicles

2025); see, e.g., *Cochran* v. *Dept. of Transportation*, 350 Conn. 844, 851, 327 A.3d 901 (2024) (looking to dictionary definition of "commonly used phrasal verb" when phrase was not defined in broader statutory scheme). Using those dictionary definitions, we interpret the second sentence of § 14-63-36c (c) of the regulations to provide that the additional fees for exceptional services shall be set down in detail and conform to "the hourly charge for labor" under "the provisions of section 14-65j-3 of the Regulations of Connecticut State Agencies." Regs., Conn. State Agencies § 14-63-36c (c).

"The hourly charge for labor" under § 14-65j-3 of the regulations must be posted on a "sign . . . not . . . less than 17 inches by 24 inches," and that sign must "be displayed in each area of the premises where work orders are placed by customers." Id., § 14-65j-3 (a). Furthermore, § 14-65j-3 provides in relevant part that "[e]**ach sign shall have**" a heading that is titled, " '**LABOR CHARGES**,' " and that this heading "shall be 120 point bold face type, caps, sans-serif [font] . . . ." (Emphasis in original.) Id., § 14-65j-3 (b). Moreover, the regulation sets out the specific "order, form and [divisions]" of the sign containing the hourly charge for labor. (Emphasis omitted.) Id., § 14-65j-3 (d).

Consequently, § 14-65j-3 of the regulations sets forth, in specific detail, the manner in which "[t]he hourly charge for labor" must be "displayed" at a repair shop. Id., § 14-65j-3 (a). The regulation is not concerned, however, with how that repair shop determines its hourly rate for labor—it is concerned only with how the hourly rate is displayed to the customer. See id. (sign containing hourly rate for labor shall be "displayed in each area of the premises where work orders are placed by customers"). For example, § 14-65j-3 is not concerned with whether the repair shop takes its employees' benefits, such as health insurance, into account when setting its hourly rate for labor, or whether the repair shop

Modzelewski's Towing & Storage, Inc. *v.* Commissioner of Motor Vehicles

seeks to recoup the costs of training or certification courses when setting that rate. Because of the cross-reference to the regulatory requirement in § 14-65j-3 (a) that a repair shop display the hourly charge for labor on the charges and conditions sign, we conclude that the second sentence of § 14-63-36c (c) similarly is a posting requirement, specifically, that a wrecker service display a sign with an itemized list of additional fees for exceptional services that is comparable to how the hourly charge for labor is presented on the charges and conditions sign. See, e.g., *Commission on Human Rights & Opportunities* v. *Board of Education*, 270 Conn. 665, 690, 855 A.2d 212 (2004) (finding that "combination of statutory cross-references help[ed] to explain [statutory] language").

The fact that all wrecker services already must display the charges and conditions sign further supports the reasonableness of this interpretation. The charges and conditions sign must be displayed by "[e]ach motor vehicle repair shop"; General Statutes § 14-65i (b); and a " 'motor vehicle repair shop' or 'repair shop' " is defined as "a new car dealer, a used car dealer or a repairer, or their agents or employees." General Statutes § 14-65e.[11] Because a wrecker service is also required to be a licensed "motor vehicle dealer or repairer" pursuant to § 14-66 (a) (1), all wrecker services must display the charges and conditions sign. Because a wrecker service is legally required to comply with the hourly charge for labor as it appears on the charges and conditions sign, the hourly charge for labor is a suitable example for the legislature to refer to when promulgating the posting requirements for any additional fees for exceptional services. Because § 14-63-36c (c) of the regulations directs

_____

[11] Although § 14-65e was the subject of an amendment in 2023; see Public Acts 2023, No. 23-40, § 8; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

353 Conn. 486 SEPTEMBER, 2025 505

Modzelewski's Towing & Storage, Inc. *v.* Commissioner of Motor Vehicles

a wrecker service to § 14-65j-3 of the regulations, we find that the most logical conclusion is to view that as a requirement that relates to the posting of additional fees for exceptional services.[12] Accordingly, we conclude that the most reasonable interpretation of § 14-63-36c (c) of the regulations is that it permits a wrecker service to "charge additional fees for exceptional services . . . which are reasonable and necessary for . . . nonconsensual towing"[13] if those additional fees are (1) itemized and posted on a sign, in conformance with how the hourly charge for labor must be posted pursuant to § 14-65j-3 of the regulations, and (2) itemized separately in the invoice submitted to the owner.

Our interpretation is further supported by consideration of the related regulatory scheme for the state

_____

[12] The plaintiffs posted a sign with an itemized list of additional fees for exceptional services. Most of those itemized fees are consistent with what the plaintiffs charged Sentry, including the $1750 initial fee, as well as the $750 hourly rate for the rotator truck, and the $250 hourly rate for the "[r]igging [s]upervisor." Although the plaintiffs' sign lists a "[m]ajor [i]ncident [r]ecovery [truck]" at a rate of $550 per hour, the plaintiffs charged Sentry $750 per hour for an "emergency response vehicle," which we do not see expressly listed on the plaintiffs' sign. Additionally, there is no "scene supervisor" listed, but the plaintiffs' sign displays a "[c]lean-[u]p [s]upervisor" at the same hourly rate of $250.

[13] We recognize that these additional fees for exceptional services are assessed in connection with a "nonconsensual" tow; see Regs., Conn. State Agencies § 14-63-34 (b); and, therefore, one might question the value of requiring the posting of such fees, given that the owners of these vehicles do not have an opportunity to voluntarily choose a wrecker service. We presume, however, that the requirement to post additional fees for exceptional services could prevent an unscrupulous wrecker service from otherwise charging arbitrary or discriminatory fees, such that we cannot say that such a regulation would be meaningless. See, e.g., *Jim's Auto Body* v. *Commissioner of Motor Vehicles*, 285 Conn. 794, 810, 942 A.2d 305 (2008) ("the legislative history does show . . . that the purpose of [General Statutes] §§ 14-63 through 14-65k is to regulate the industry of dealers and repairers, while simultaneously protecting customers of those licensees from unscrupulous business practices"); see also, e.g., *American Promotional Events, Inc.* v. *Blumenthal*, 285 Conn. 192, 203, 937 A.2d 1184 (2008) ("[i]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous" (internal quotation marks omitted)).

Modzelewski's Towing & Storage, Inc. *v.* Commissioner of Motor Vehicles

police's rotation list for nonconsensual towing. See Regs., Conn. State Agencies § 29-23a-1 et. seq. This regulatory scheme governs the state police's operation of a rotational system for summoning wreckers, which "shall [be] use[d] . . . to arrange the towing or transportation of disabled motor vehicles if the vehicle owner or operator is incapacitated, unavailable or leaves the procurement of wrecker service to the trooper at the scene." Id., § 29-23a-7 (a); see also General Statutes § 29-23a (a) (codifying "purpose" of rotational system for summoning licensed wrecker operators).

In order to be included on the rotation list, wrecker services must apply to the state police; see Regs., Conn. State Agencies § 29-23a-4 (a); and must comply with a variety of requirements and standards imposed by the state police. For example, the state police "shall confirm that each wrecker operator" is in compliance with all of the applicable statutes and regulations, including § 14-63-36c (c) of the regulations. Id., § 29-23a-4 (c). The state police's standards also provide that the wrecker service "shall respond to calls for service on limited-access highways no later than [twenty] minutes after notification by state police, [and thirty] minutes in all other locations." Id., § 29-23a-5. Furthermore, the wrecker services must acquire certain certifications; see id., § 29-23a-6;[14] and are burdened with certain "[r]esponsibilities" pursuant to § 29-23a-9 of the regulations, including that a "heavy-duty-recovery service wrecker operator[15]

[14] Modzelewski testified before the hearing officer that the towing industry requires extensive "training . . . [and] certifications . . . ." Specifically, wrecker operators "need to have [certifications] through [the Federal Emergency Management Agency], OSHA, [and] certification[s] through [the towing industry's] WreckMaster, [the Towing and Recovery Association of America, Inc.], the [Hazardous Waste Operations and Emergency Response] . . . [and] [s]tuff like that."

[15] A "heavy-duty-recovery service wrecker operator" is defined as "a wrecker operator with two commercially manufactured, heavy-duty hydraulic recovery wreckers, with boom capacities of a total combined rating of 50 tons, intended to service vehicles of 26,001 pounds or greater [gross vehicle weight rating], which may include a rotator . . . ." Regs., Conn. State Agencies § 29-23a-1 (4).

Modzelewski's Towing & Storage, Inc. *v.* Commissioner of Motor Vehicles

shall have available . . . [twelve] support items or services . . . .'' (Footnote added.) Id., § 29-23a-9 (j).

The plaintiffs argue that ''[m]any of [the required support items] relate to the 'special equipment' '' that is necessary for performing exceptional services, and they specifically point to the state police's requirement that a wrecker service have a ''rotator/crane'' and ''air compressor[s] . . . .'' (Emphasis omitted.) Compare Regs., Conn. State Agencies § 29-23a-9 (j) (listing required support items), with id., § 14-63-36b (4) (defining '' '[e]xceptional services' '' as ''the use of special equipment such as cutting torches . . . [or] air compressors''). In their brief, the plaintiffs' imply that, if wrecker services are unable to recoup their costs for this kind of expensive, specialized equipment, then wrecker services will no longer agree to be on the state police's rotation list for nonconsensual towing. Wrecker services will choose to forgo the rotation list, the plaintiffs contend, because, in order to be on that list, they are required to purchase and maintain certain ''support items,'' which, the plaintiffs argue, qualify as special equipment used to perform exceptional services. Id., § 29-23a-9 (j). Consequently, the plaintiffs reason that, in order to construe § 14-63-36c (c) and the regulations pertaining to the state police's rotation list harmoniously, this court should interpret § 14-63-36c (c) as allowing wrecker services to charge additional fees for the costs associated with the use of special equipment to accomplish the exceptional services provided, otherwise ''there may not be enough [wrecker services] available'' for nonconsensual towing.

We find the plaintiffs' reasoning persuasive. In light of the fact that wrecker services are required to purchase costly and specialized equipment to enable them to perform exceptional services for purposes of being

Modzelewski's Towing & Storage, Inc. *v.* Commissioner of Motor Vehicles

included on the state police's rotation list,[16] it would be well-nigh bizarre if wrecker services are precluded from recovering, pursuant to § 14-63-36c (c) of the regulations, sufficient funds to recoup the costs for procuring, insuring and maintaining that special equipment.

Moreover, the commissioner's argument that a wrecker service can recoup its capital costs for special equipment through the income stream that is provided by the hourly rate is belied by the related regulations. As the commissioner's counsel observed at oral argument before this court, the regulations allow a wrecker service to assess only two types of charges in connection with a nonconsensual tow. The first type is based on the hourly rate, which is set by the commissioner; see Regs., Conn. State Agencies § 14-63-36c (b); and the other type is the "additional fees for exceptional services . . . ." Id., § 14-63-36c (c). The commissioner's counsel conceded at oral argument that additional fees for exceptional services are excluded from the definition of an hourly rate. See id., § 14-63-36b (5) (" '[h]ourly rate' . . . shall not include exceptional services").

Consequently, there are two reasons why we find untenable the commissioner's claim that a wrecker service can recoup, through the hourly rate alone, the costs associated with exceptional services, including the cost to purchase and maintain the special equipment used therefor. First, in defining the "hourly rate," the regulations expressly state that "[s]uch rate shall not include exceptional services . . . ." Id. Because the hourly rate cannot serve to compensate a wrecker service for exceptional services, it is less plausible that the hourly rate could somehow be used by a wrecker service to recoup the costs of the special equipment used to carry

[16] There was testimony during the January, 2020 hearing before the hearing officer that one would have to invest, "on a low-end," about $2.5 million in order to purchase the special equipment required to be on the state police's rotation list.

Modzelewski's Towing & Storage, Inc. *v.* Commissioner of Motor Vehicles

out those exceptional services. Second, if the commissioner sets the hourly rate for all nonconsensual towing based on, among other things, the cost to procure special equipment for exceptional services, as the commissioner argues, then, given that those vehicle owners whose tow did not require exceptional services are billed for the same hourly rate as those owners whose tow did require such exceptional services, the owners who did not utilize exceptional services would be subsidizing the costs for owners who did use them. Moreover, a wrecker service collecting the hourly rate is not required to be on the state police's rotating list, and, therefore, a wrecker service that chooses not to participate in the program and not to purchase the required specialized equipment would experience a windfall because the uniform hourly rate for all nonconsensual towing, under the commissioner's reading, would take into account the cost of the special equipment needed to be on the state police's rotation list. But see Public Acts 2025, No. 25-55, §§ 7 and 8 (P.A. 25-55) (independently regulating " '[p]olice-ordered towing' " and " '[n]on-consensual towing' "). In light of the foregoing, we reject the commissioner's proposed interpretation[17]

---

[17] We note that, during the 2025 legislative session, a number of legislators cosponsored a bill aimed at "reforming the motor vehicle towing statutes." House Bill No. 7162, 2025 Sess. The legislation repeals the current version of § 14-66, effective October 1, 2025; see P.A. 25-55, § 6; and separates the statutes into those that govern "police-ordered towing" and those that govern "nonconsensual towing," meaning that the commissioner will set the appropriate fees for each category of towing independently. P.A. 25-55, §§ 7 and 8. The legislation also increases "the maximum hourly rate that may be charged for . . . nonconsensual towing" in the interim; P.A. 25-55, § 10; until the commissioner's first regular, ongoing three year review of that rate in 2028. See P.A. 25-55, §§ 7 and 10.

For the first time, the legislature defined "exceptional services" and detailed what services are included in the maximum hourly rate. P.A. 25-55, § 10. The public act expressly provides that "[a] wrecker service may charge additional fees for exceptional services, which may include the hourly charge for labor and the use of equipment to perform such exceptional services, provided such exceptional services are itemized, reasonable and necessary for the nonconsensual towing or transporting of a motor vehicle." P.A. 25-55, § 10.

510 SEPTEMBER, 2025 353 Conn. 486

Modzelewski's Towing & Storage, Inc. *v.* Commissioner of Motor Vehicles

and, instead, conclude that the most reasonable interpretation of the second sentence of § 14-63-36c (c) of the regulations is that it requires a wrecker service to post an itemized list of its additional fees for exceptional services, in conformity with how the hourly charge for labor appears on the charges and conditions sign required by § 14-65j-3 of the regulations.

The judgment of the Appellate Court is reversed except with respect to the Appellate Court's decision to uphold the denial of the plaintiffs' request to dismiss Sentry's complaint against the plaintiff Modzelewski's Towing & Recovery, Inc., and the case is remanded to that court with direction to reverse the trial court's judgment dismissing the plaintiffs' administrative appeal and to remand the case to the trial court with direction to reverse the hearing officer's decision, to vacate the order of restitution and imposition of a civil penalty, and to remand the case to the hearing officer for a new hearing on Sentry's challenge to the fees charged in the plaintiffs' invoice for the December 4, 2014 tow and for further proceedings in accordance with this opinion.

In this opinion the other justices concurred.